UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

WILLIAM HENRY PAYTON,

        Plaintiff,

    v.                          **Civil Action 2:20-cv-4838**
                                            **Judge Michael H. Watson**
                                            **Magistrate Judge Chelsey M. Vascura**

ANDREW COX, *et al.*,

        Defendants.

### ORDER and REPORT AND RECOMMENDATION

Plaintiff, William Henry Payton, a prisoner at Pickerington Correctional Institution ("PCI") proceeding without the assistance of counsel, brings this civil rights action under 28 U.S.C. § 1983 against Defendants, Andrew Cox, Dave Dunn, Tom Olinger, and Jane and John Doe Defendants, all of whom are employees of PCI.  This matter is before the Court for the initial screen of Plaintiff's Complaint under 28 U.S.C. § 1915A to identify cognizable claims and to recommend dismissal of Plaintiff's Complaint, or any portion of it, which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(a)–(b); *see also McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997).  Having performed the initial screen, for the reasons that follow, the undersigned **RECOMMENDS** that the Court permit Plaintiff to proceed with the following claims: (1) Plaintiff's First Amendment retaliation claim against Defendant Cox arising from Plaintiff's assignment to the "guts" floor; and (2) Plaintiff's conspiracy claim against Defendants Cox and Dunn premised upon Plaintiff's performance review and work

reassignment in December 2018.  The undersigned further **RECOMMENDS** that Plaintiff's remaining claims be **DISMISSED** pursuant to 28 U.S.C. § 1915A for failure to state a claim on which relief may be granted.

This matter is also before the Court for consideration of Plaintiff's other pending motions, including: Plaintiff's motion seeking amendment of the pleadings (ECF No. 2); Plaintiff's motion seeking emergency injunctive relief (ECF No. 9); Plaintiff's motions and filings requesting that the United States Marshal effect service of process (ECF Nos. 4, 5, 6, 12, 14, 15, 16, and 17); Plaintiff's motion seeking *in forma pauperis* status (ECF No. 7); and his motion seeking appointment of counsel (ECF No. 8).  For the reasons that follow, Plaintiff's motion seeking amendment of his pleadings, his request to proceed *in forma pauperis*, and his motions and filings requesting the United States Marshal to effect service of process are **GRANTED**, (ECF Nos. 2, 4, 5, 6, 7, 12, 14, 15, 16, and 17); his motion seeking appointment of counsel is **DENIED**, (ECF No. 8); and it is **RECOMMENDED** that his motion seeking emergency injunctive relief be **DENIED**, (ECF No. 9).

## I.  PRELIMINARY MOTIONS

Plaintiff has filed a Motion he captions "MOTION: Judicial Notice for the Courts to Add Declaration of William H. Payton to the Authenticity of Exhibits in PLRA of the Complaint." (ECF No. 2.)  Reading Plaintiff's *pro se* litigant's pleadings liberally, the undersigned construes this as a motion to amend his Complaint to add the "Declaration of Authenticity" he attaches to this Motion as an exhibit to his Complaint.  Pursuant to Federal Rule of Civil Procedure 15(a)(1), a party may "amend its pleadings once as a matter of course within . . . 21 days after serving it." Fed. R. Civ. P. 15(a)(1).  Plaintiff filed this motion six days after his Complaint and has not made any other amendments.  Accordingly, Plaintiff's Motion (ECF No. 2) is **GRANTED**.  The

Clerk is **DIRECTED** to add the attached "Declaration of Authenticity," (ECF No. 2 at PAGEID # 118–119), as an exhibit to Plaintiff's Complaint.

This matter is also before the Court on Plaintiff's Motion Requesting Marshals to effect Service of Process and other related filings and motions (ECF Nos. 4, 5, 6, 12, 14, 15, 16, and 17), all of which the Court construes as requesting the United States Marshal to effect service of process. Plaintiff's Motions are **GRANTED**, and the Court **DIRECTS** the United States Marshal to effect service of process.

Plaintiff has also filed a Motion to File *In Forma Pauperis*, seeking *in forma pauperis* status for the remainder of this action. (ECF No. 7.) Plaintiff's request to proceed *in forma pauperis* is **GRANTED**. Plaintiff is permitted to prosecute this action without prepayment of fees or costs, and any judicial officers who render services in this action shall do so as if the costs had been prepaid. 28 U.S.C. § 1915(a).

This matter is also before the Court on Plaintiff's Motion for Appointment of Counsel. (ECF No. 8.) Plaintiff's request seeking appointment counsel is **DENIED** at this juncture. Although this Court has the statutory authority under 28 U.S.C. § 1915(e) to appoint counsel in a civil case, appointment of counsel is not a constitutional right. *Lavado v. Keohane*, 992 F.2d 601, 605–06 (6th Cir. 1993) (citation omitted). Rather, "[i]t is a privilege that is justified only by exceptional circumstances." *Id*. at 606. The Court has evaluated whether such exceptional circumstances exist and determines that the appointment of counsel is not warranted at this juncture.

## II.    BACKGROUND

Plaintiff is an inmate at PCI. (Compl. ¶ 15, ECF No. 1.) According to his Complaint, Plaintiff suffers from heart disease and has had a defibrillator since 2004. (Pl.'s Decl. ¶ 3, PAGEID # 26, ECF No. 1.) From 2016–2018, Plaintiff worked in the Meat Processing Career

3

Center ("MPCC") at PCI.  (Compl. ¶ 29, ECF No. 1.)  When Plaintiff started at MPCC, his supervisor assigned him to the position of "meat dresser I" on the processing floor, which Plaintiff states adequately accommodated his alleged disability because of that position's lifting requirements and average temperatures.  (*Id.* at ¶ 28–29.)  Plaintiff alleges that while working as a "meat dresser I," he typically received positive reviews, achieved a high pay grade, and earned paid time off.  (*Id.* at ¶ 30.)

In December 2018, Plaintiff asked Defendant Dunn to use two of his paid days off. (Compl. ¶ 33, ECF No. 1.)  Defendant Dunn allegedly responded, "I don't give personal leave and you're not going to get it—get back to work."  (*Id.* at ¶ 35.)  Plaintiff asserts that Defendant Dunn's refusal to grant time off violates prison policy.  (*Id.* at ¶ 37.)  Plaintiff alleges that he next spoke with Defendant Cox, Defendant Dunn's supervisor, who approved the paid time off.  (*Id.* at ¶ 36.)  According to Plaintiff, because he feared retaliation, he spoke with an investigator at PCI about his meeting with Defendant Dunn and about Defendant Dunn's failure to follow the policy for personal leave.  (*Id.* at ¶ 37.)  Plaintiff alleges that Defendants Cox and Dunn fabricated a poor performance review of Plaintiff in retaliation for him speaking to the investigator.  (*Id.* at ¶ 40.)  Plaintiff further alleges that Defendants Cox and Dunn then used this fabricated poor review as a pretext for removing him from his position at MPCC.  (Compl. Ex.–P–12, PAGEID # 38, ECF No. 1-1.)  At the beginning of January 2019, PCI assigned Plaintiff to a yard work position.  (*Id.*)  Plaintiff filed informal complaints about this reassignment, but the prison officials who responded told Plaintiff that they could not address his concerns because he had not timely completed the correct paperwork.  (Compl. Ex.–P–12, PAGEID # 51–53, ECF No. 1-1.)

In March 2019, Plaintiff reached out to Disability Rights Ohio about his reassignment. (*Id.* at PAGEID # 69–70.) Although Disability Rights Ohio did not assume representation of Plaintiff, one of their attorneys reached out to the Ohio Department of Rehabilitation and Corrections ("ODRC"). (Compl. ¶ 55, ECF No. 1.) PCI then reinstated Plaintiff as a meat dresser at MPCC. (Compl. ¶ 55, ECF No. 1.) However, Plaintiff did not return to his position on the processing floor. (*Id.* at ¶¶ 62–63.) Instead, Defendant Cox assigned him to the "guts" floor, and allegedly said the assignment was "punishment for filing those grievances and getting your job back." (*Id.* at ¶ 63.) Plaintiff alleges his position on the "guts" floor required him to work in hot temperatures, around foul odors, and lift up to 250–300 pounds at a time. (*Id.* at ¶¶ 71–72.) Plaintiff further alleges that Defendant Cox reassigned him in retaliation for filing grievances and that the assignment to the "guts" floor failed to adequately accommodate his disability. (*Id.* at ¶¶ 63, 66.)

Finally, Plaintiff alleges that in November 2019, he was asked to sign a form stating that he had completed certain training. (Compl. ¶ 76, ECF No. 1.) According to Plaintiff, because MPCC had not provided such training, he did not want to sign the form. (*Id.*) Plaintiff alleges that he signed the form with the notation "under duress" after Defendant Cox threatened him. (*Id.*) In early December 2019, Defendants Cox and Olinger reassigned Plaintiff to yard work. (*Id.* at ¶ 80.)

Plaintiff filed this action on September 16, 2020. (ECF No. 1.) In his Complaint, Plaintiff represents that he fully exhausted his administrative remedies and attaches part of his grievance history. (Compl. Ex., ECF No. 1-1, PAGEID # 27–115.) Plaintiff asserts that Defendants Cox, Dunn, and Olinger violated his rights under the First, Eighth, and Fourteenth

Amendments, as well as his rights under Title II of the Americans with Disabilities Act (the "ADA"). (Compl. ¶¶ 10–14, ECF No. 1.)

On October 6, 2020, Plaintiff filed a motion he captions "Order to Show Cause and Temporary Restraining Order," (ECF No. 9), which the Court construes as seeking emergency injunctive relief. In this Motion, Plaintiff asks the Court to reinstate him to his position as "Meat Dresser I" at MPCC and also asks the Court to enjoin Defendants from retaliating against him for filing this action. (*Id.*)

The undersigned first conducts the initial screen of Plaintiff's Complaint under 28 U.S.C. § 1915A before turning to his motion seeking emergency injunctive relief.

### III.     INITIAL SCREEN UNDER § 1915A

Congress enacted 28 U.S.C. § 1915A as part of the Prison Litigation Reform Act in order to "discourage prisoners from filing [frivolous] claims that are unlikely to succeed." *Crawford-El v. Britton*, 523 U.S. 574, 596 (1998). Congress directed the Courts to "review, before docketing, if feasible or in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In particular, subsection (b) provides:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—
>
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or—
>
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

Thus, § 1915A requires *sua sponte* dismissal of an action upon the Court's determination that the action is frivolous or malicious, or upon determination that the action fails to state a claim upon which relief may be granted. *See Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir.

6

2010) (applying Federal Rule of Civil Procedure 12(b)(6) standards to review under 28 U.S.C. §§ 1915A).

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Further, a complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In considering whether this facial plausibility standard is met, a Court must construe the complaint in the light most favorable to the non-moving party, accept all factual allegations as true, and make reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citations omitted). The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). In addition, the Court holds *pro se* complaints "to less stringent standards than

formal pleadings drafted by lawyers." *Garrett v. Belmont Cty. Sheriff's Dep't*, 374 F. App'x 612, 614 (6th Cir. 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

As set forth above, Plaintiff asserts the following causes of action in his Complaint: (1) that Defendants Cox, Dunn, and Olinger retaliated against him in violation of his First Amendment right to free speech; (2) that Defendants Cox, Dunn, and Olinger conspired to violate his First and Fourteenth Amendment rights; (3) that Defendant Cox violated his Eighth Amendment right to be free from cruel and unusual punishment by showing deliberate indifference to a serious medical need; (4) that Defendants Cox and Dunn discriminated against him on the basis of his disability, violating his rights under the Fourteenth Amendment and Title II of the Americans with Disabilities Act (the "ADA"); and (5) that Defendant Cox failed to provide a reasonable accommodation for his disability, in violation of the Fourteenth Amendment and Title II of the ADA.

As a threshold matter, Plaintiff includes "John/Jane Does (unknown)" as Defendants in his Complaint. His Complaint, however, does not contain any allegations implicating any Doe Defendants. It is therefore **RECOMMENDED** that the Doe Defendants be **DISMISSED** for failure to state a claim upon which relief may be granted.

The undersigned addresses Plaintiff's remaining claims in turn.

A.      **Exhaustion Requirement**

Plaintiff failed to properly exhaust his administrative remedies with respect to (1) his retaliation claim against Defendants Cox and Dunn arising from their alleged termination of him from MPCC in retaliation for his speaking with the PCI investigator and (2) his ADA Title II claim premised upon Defendants Cox and Dunn improperly using his medical condition as a basis to terminate him from MPCC.

Before commencing an action under 42 U.S.C. § 1983 or any other federal law, the

Prison Litigation Reform Act, 42 U.S.C. § 1997e ("PLRA") requires prisoners to exhaust

administrative remedies. As the Sixth Circuit Court of Appeals has explained:

> The Prison Litigation Reform Act requires state prisoners to follow and exhaust all applicable state grievance procedures before filing suit in federal court. *See* 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 82, 90 [ ] (2006). This requirement is not jurisdictional; rather, exhaustion is an affirmative defense that must be pleaded and proved by the defendants. *Jones* [*v. Bock*], 549 U.S. [199,] 212 [(2007)]. When the defendants in prisoner civil rights litigation move for summary judgment on administrative exhaustion grounds, they must prove that no reasonable jury could find that the plaintiff exhausted his administrative remedies. *Surles v. Andison*, 678 F.3d 452, 455–56 (6th Cir. 2012).
>
> There is no uniform federal exhaustion standard. A prisoner exhausts his remedies when he complies with the grievance procedures put forward by his correctional institution. *Jones*, 549 U.S. at 217–19[ ]. "This court requires an inmate to make 'affirmative efforts to comply with the administrative procedures,' and analyzes whether 'those efforts to exhaust were sufficient under the circumstances.'" *Risher* [*v. Lappin*], 639 F.3d [236,] 240 [(6th Cir. 2011)] (quoting *Napier v Laurel Cty.*, 636 F.3d 218, 224 (6th Cir. 2011)).

*Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017). The purpose of the exhaustion

requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits,

to correct prison errors that can and should be corrected and to create an administrative record

for those disputes that eventually end up in court." *Id.* at 591 (quoting *Reed-Bey v. Pramstaller*,

603 F.3d 322, 324–25 (6th Cir. 2010)).

The PLRA's exhaustion requirement is an affirmative defense, and generally a plaintiff

need not plead sufficient facts to demonstrate exhaustion to survive a screen under § 1915A.

*Jones*, 549 U.S. at 216. However, "[a] complaint is subject to dismissal for failure to state a

claim if the allegations, taken as true, . . . show that relief is barred by an affirmative defense."

*Mattox*, 851 F.3d at 590 (quoting *Jones*, 549 U.S. at 215) (internal alterations omitted).

The PCI inmate handbook sets out the process for appeals related to work assignments as

follows:

9

> All appeals for reconsideration of assignment must be submitted in writing to the Chief of Unit Management or designee within **five days** for consideration. The decision of the Chief of Unit Management shall be considered final.

INMATE HANDBOOK, 16, Pickaway Corr. Inst. (2014).

Here, the exhibits to Plaintiff's Complaint reveal that Plaintiff did not properly exhaust his administrative remedies with respect to the two claims premised on his December 2018 removal from MPCC. Plaintiff communicated with prison officials via informal complaints in January 2019 regarding his reassignment outside of MPCC. (Compl. Ex. P–19b, PAGEID # 52–53, ECF No. 1.) In his informal complaints, Plaintiff discussed Defendants Cox's and Dunn's "retaliation" and alleges that they improperly used "medical reasons" for removing him. (*Id.*) In response, the officials explained that they could not address his concerns because he was required to submit an appeal within five days, and that he had failed to do so. (*Id.*) *See also* INMATE HANDBOOK, 16, Pickaway Corr. Inst. (2014). Because Plaintiff did not file his appeal before the five-day deadline, he failed to properly exhaust administrative remedies. *See Post v. Taft*, 97 F. App'x 562 (6th Cir. 2004) (holding that a prisoner's First Amendment and ADA claims were barred because the prisoner "did not exhaust his administrative remedies")

Accordingly, the undersigned **RECOMMENDS** that Plaintiff's First Amendment retaliation claim and his Title II discrimination claim premised on his 2018 removal from MPCC be **DISMISSED WITHOUT PREJUDICE**.

The undersigned cannot determine from the face of the Complaint whether Plaintiff's other claims have been properly exhausted. Therefore, the exhaustion of those claims is better explored at a later stage in the case. *See Jones*, 549 U.S. at 212.

**B.     Retaliation Claim Premised Upon Assignments to the "Guts" Floor and Yard Work**

Plaintiff alleges that Defendant Cox assigned him to work on the "guts" floor in retaliation for filing grievances. (Compl. ¶ 63, ECF No. 1.) Plaintiff also alleges that in

10

December 2019, Defendants Cox and Olinger assigned him to yard work in retaliation for his refusal to sign certain paperwork. (*Id.* at ¶ 80.)

"Prisoners have a First Amendment right to file grievances and access the courts without suffering retaliation for so doing." *Rodgers v. Hawley*, 14 F. App'x 403, 409–10 (6th Cir. 2001). A retaliation claim entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct. *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

For his reassignment to the "guts" floor, the undersigned finds that Plaintiff has plausibly alleged a First Amendment retaliation claim. First, he alleges that he filed grievances, and filing grievances is protected conduct. *Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018) ("[A]n inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf.") (quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)). Second, Plaintiff alleges that Defendant Cox assigned him to heavy labor on the "guts" floor. Plaintiff describes the "guts" floor as being hot, foul-smelling, and requiring significantly more physical strength than other positions at MPCC. (Compl. ¶¶ 66–73, ECF No. 1.) That is, Plaintiff alleges that Defendant Cox reassigned him to work in a less coveted position that has an objectively unpleasant environment. Such a reassignment could constitute an adverse action. *See Shehee v. Luttrell*, 199 F.3d 295, 300–01 (6th Cir. 1999) (dismissal from a commissary prison job, "a coveted assignment based on its higher pay and favorable working conditions," could constitute an adverse action). As to causation, Plaintiff alleges that after he was reinstated to MPCC, Defendant Cox told him that he was assigning him to the "guts" floor as "punishment for filing

those grievances and getting your job back." (*Id.* at ¶ 63.) This alleged statement satisfies the causation requirement because it links Plaintiff's grievances to his assignment to the "guts" floor. Accordingly, it is **RECOMMENDED** that Plaintiff be permitted to proceed with his First Amendment retaliation claim premised upon his reassignment to the "guts" floor.

As to Plaintiff's third claim of retaliation—his reassignment to yard work—even if the Court assumes that Plaintiff engaged in protected activity, Plaintiff has not sufficiently alleged an adverse action. "An adverse action is one that would deter a person of ordinary firmness from the exercise of the right at stake." *Thaddeus–X*, 175 F.3d at 396 (internal quotation marks omitted). "Whether a retaliatory action is sufficiently severe to deter a person of ordinary firmness from exercising his or her rights is a question of fact." *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002) (citing cases). "However, some adverse actions are so *de minimis* that they do not rise to the level of a constitutionally cognizable injury." *Maben*, 887 F.3d at 266. Although Plaintiff characterizes his injury as being "fired" from his job, his allegations reflect that he instead was merely reassigned to a different position. Further, Plaintiff was reassigned away from the hot and foul-smelling "guts" floor to yard work. Thus, Plaintiff has not alleged any facts upon which the Court can rely to conclude that his reassignment to yard work was any less favorable than his assignment on the "guts" floor. *C.f.*, *Siggers-El v. Barlow*, 412 F.3d 693, 701–02 (6th Cir. 2005) (loss of income from a high-paying prison job can constitute an adverse action for retaliation purposes); *Nettles v. Smoker*, No. 1:13CV1353, 2015 WL 1565429, at *5 (W.D. Mich. Apr. 8, 2015) ("[T]he removal of a prisoner from his prison job has generally been held not to constitute 'adverse action' under the retaliation analysis.") (internal quotation marks omitted) (citing cases). It is therefore **RECOMMENDED** that Plaintiff's retaliation claim premised on his December 2019 assignment to yard work be **DISMISSED**.

### C.    Conspiracy Claims

Plaintiff advances two conspiracy claims.  In support of his first conspiracy claim, Plaintiff alleges that "Defendants Cox and Dunn conspired to, and created a false [performance review] with a low score of 11 out of 70 of incorrect, discriminating, damaging and retaliatory information with the intent of having Plaintiff fired."  (*Id.* at ¶ 40.)  Plaintiff further alleges that Defendants Cox and Dunn said Plaintiff was a "medical liability" in the fabricated performance review, although Plaintiff had allegedly never complained to them of health issues.  (*Id.* at ¶ 49.) Plaintiff asserts that Defendants' inclusion of his health issues demonstrates discrimination against him on the basis of his disability.  (*Id.* at ¶ 51.)  For his second conspiracy claim, Plaintiff alleges that in November 2019, Defendants Cox and Olinger conspired to create another fabricated poor performance review and to have Plaintiff "fired."  (*Id.* at ¶ 77.)

Courts traditionally view allegations of conspiracy against public officials with "suspicion and disfavor."  *Fisher v. City of Detroit*, 4 F.3d 993 (6th Cir. 1993).  Thus, the pleading requirement for a civil conspiracy claim is strict.  *BPNC, Inc. v. Taft,* 147 F. App'x 525, 532 (6th Cir. 2005).  "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim . . . ."  *Fieger v. Cox,* 524 F.3d 770, 776 (6th Cir. 2008) (internal quotations omitted).

Plaintiff brings this claim under 42 U.S.C. § 1985, which prohibits conspiracies to deprive persons of their equal protection rights.  42 U.S.C. § 1985; *Leisure v. Franklin Cty. Court of Common Pleas*, No. 2:05-CV-1123, 2006 WL 1281764, at *3 (S.D. Ohio May 8, 2006). To recover under the statute, "a plaintiff must also allege and prove that the conspiracy was motivated by some class-based discriminatory animus."  *Leisure*, 2006 WL 1281764, at *3. Relevant here, disability-based discrimination is a type of class-based discrimination.  *See City of*

*Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 442–43, (1985); *see also Bartell v. Lohiser*, 215 F.3d 550, 559 (6th Cir. 2000).

Applied here, the undersigned finds that Plaintiff has plausibly alleged a conspiracy claim under § 1985 as it relates to Defendants Cox's Dunn's first alleged creation of a false performance review because Plaintiff alleges with sufficient specificity that Defendants Cox and Dunn conspired to violate his civil rights. For example, Plaintiff describes with detail the circumstances surrounding his reassignment and the allegedly unwarranted statements about his health condition, which could suggest that Defendants were motivated by discriminatory animus. Although Plaintiff has, at this point, only offered circumstantial evidence of a conspiracy, "[r]arely in a conspiracy case will there be direct evidence of an express agreement among all the conspirators to conspire[; thus,] circumstantial evidence may provide adequate proof of conspiracy." *Bazzi v. City of Dearborn*, 658 F.3d 598, 606 (6th Cir. 2011) (quoting *Weberg v. Franks*, 229 F.3d 514, 528 (6th Cir. 2000)). Accordingly, the undersigned **RECOMMENDS** that Plaintiff be permitted to proceed on his first conspiracy claim.

In contrast, Plaintiff has not satisfied the strict pleadings standards that apply to conspiracy claims with respect to his second conspiracy claim (premised upon his reassignment in November 2019). Rather, Plaintiff offers only a conclusory statement that the timing of his November 2019 poor performance review "shows another conspiracy." (Compl. ¶ 77, ECF No. 1.) As discussed above, "conclusory allegations unsupported by material facts will not be sufficient to state [a conspiracy] claim . . . ." *Fieger,* 524 F.3d, at 776 (internal quotations omitted). It is therefore **RECOMMENDED** that Plaintiff's second conspiracy claim be **DISMISSED**.

### D.    Eighth Amendment Claims

Plaintiff alleges that Defendant Cox's "malicious and intentional actions" harmed Plaintiff's health and violated the Eighth Amendment.  (Compl. ¶ 12, ECF No. 1.)  Specifically, Plaintiff asserts that Defendant Cox knew Plaintiff had a heart condition, but "subject[ed] [him] to over 6 months of heavy and heat-intensive labor," which Plaintiff alleges was especially physically taxing for him because of his heart condition.  (Compl. ¶¶ 71–73.)

"The [Eighth] Amendment . . . imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates . . . ."  *Farmer v. Brennan*, 511 U.S. 825, 932–33 (1994) (internal quotation marks and citations omitted); *see also Helling v. McKinney*, 509 U.S. 25, 33 (1993) (quoting *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989)) (holding that the Eighth Amendment "requires that inmates be furnished with the basic human needs, one of which is 'reasonable safety'").

Such claims under the Eighth Amendment require a plaintiff "to prove both the subjective and objective elements necessary to prove an Eighth Amendment violation.  To satisfy the objective component for a claim based upon a failure to prevent harm, "the inmate must show he is incarcerated under conditions posing a substantial risk of serious harm."  *Farmer*, 511 U.S. at 834 (citations omitted).  The United States Supreme Court has offered the following guidance with respect to the objective factor:

> [The objective factor] requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk.  In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate.

*Helling*, 509 U.S. at 36.

"To satisfy the subjective component, an inmate must show that prison officials had a sufficiently culpable state of mind." *Berksire v. Beauvais*, 928 F.3d 520, 535 (6th Cir. 2019) (internal quotation marks and citations omitted). The United States Court of Appeals for the Sixth Circuit has explained as follows:

> "[T]hat state of mind is one of deliberate indifference to inmate health or safety. Although the deliberate indifference standard describes a state of mind more blameworthy than negligence, this standard is satisfied if the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

*Id*. (quoting *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (internal quotation marks and citations omitted)).

The Sixth Circuit has not "addressed claims related to the hazardous working conditions of inmates, [but] other circuits have held that the Eighth Amendment is implicated when prisoners are forced to perform physical labor which is beyond their strength, endangers their lives, or causes undue pain." *Jackson v. Schultz*, No. 18-11140, 2018 WL 6985112, at *3 (E.D. Mich. Nov. 27, 2018), *report and recommendation adopted*, No. 18-11140, 2019 WL 141529 (E.D. Mich. Jan. 9, 2019); *see also Howard v. King*, 707 F.2d 215, 219 (5th Cir. 1983); *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). The Eighth Circuit also held that "the intentional placement of a prisoner in dangerous surroundings can violate the Eighth Amendment, though mere negligence is not sufficient." *Jackson*, 2018 WL 6985112, at *3 (citing *Bibbs v. Armontrout,* 943 F.2d 26, 27 (8th Cir. 1991).

Here, Plaintiff has failed to sufficiently allege an Eighth Amendment violation against Defendant Cox. Although Plaintiff has alleged that his assignment to the "guts" floor was beyond his strength given his heart condition, he was able to work in that position for six months. Moreover, Plaintiff has not alleged that he was *required* to work in this position, or that

he was required to work at all. Thus, even under the law of other circuits, Plaintiff has not plausibly alleged an Eighth Amendment violation premised on the allegedly unsafe working conditions. Accordingly, the undersigned **RECOMMENDS** that this claim be **DISMISSED**.

### E.    ADA Title II Claim

Plaintiff alleges that while working at MPCC in March 2019, Defendant Cox violated his rights under Title II of the ADA when he assigned him to work on the "guts" floor instead of reasonably accommodating his disability. (Compl. ¶¶ 58, 63–73, ECF No. 1.)

"Title II of the ADA . . . extends to state prison inmates." *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 213 (1998). Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "Under the ADA, the term 'public entity' is a broad one: it encompasses 'any State or local government,' as well as 'any department, agency, special purpose district, or other instrumentality of a State or States or local government.'" *Tri-Cities Hldgs, LLC v. Tenn. Admin. Proc. Div.*, 726 F. App'x 298, 308 (6th Cir. 2018) (quoting 42 U.S.C. § 12131(1)(A)–(B)). A plaintiff may advance claims under the ADA against public officials in their official capacity. *Bowie v. Hamilton Cty. Juvenile Court*, No. 1:18-CV-395, 2019 WL 1305864, at *4 (S.D. Ohio Mar. 22, 2019) (citing *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002)); *Bradshaw v. Sage*, No. 1:16-CV-734, 2016 WL 5859057, at *6 (W.D. Mich. Oct. 7, 2016).

"To establish a *prima facie* case of intentional discrimination under Title II of the ADA, a plaintiff must show that: (1) she has a disability; (2) she is otherwise qualified; and (3) she was being excluded from participation in, denied the benefits of, or subjected to discrimination under the program because of her disability." *Id.* (quoting *Anderson v. City of Blue Ash*, 798 F.3d 338,

356 (6th Cir. 2015)); *see also Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901,

907 (6th Cir. 2004) ("Title II does more than prohibit public entities from intentionally

discriminating against disabled individuals.  It also requires that public entities make reasonable

accommodations for disabled individuals so as not to deprive them of meaningful access to the

benefits of the services such entities provide.").  "In the typical Title II case, the plaintiff alleges

she was denied reasonable accommodations in violation of the Act."  *Sjostrand v. Ohio State

Univ.*, 750 F.3d 596, 599 (6th Cir. 2014).

Applied here, the undersigned finds that Plaintiff has failed to plausibly allege a Title II

failure-to-accommodate claim.  Even assuming Plaintiff can satisfy the first two elements of a

*prima facie* case, Plaintiff has not plausibly alleged that he was excluded or denied access to any

program, or that he was the subject of discrimination.  Indeed, Plaintiff was not excluded from

working at MPCC in 2019.  Rather, Plaintiff successfully participated in his position for six

months.  Accordingly, the undersigned **RECOMMENDS** that Plaintiff's Title II claims be

**DISMISSED**.

### IV.    MOTION FOR EMERGENCY INJUNCTIVE RELIEF (ECF No. 9)

In his motion seeking emergency injunctive relief, Plaintiff advances grounds for

injunctive relief that are largely duplicative of the claims in his Complaint.  Specifically, he

contends that Defendants are violating his rights under the ADA and under the First, Eighth, and

Fourteenth Amendments because PCI has not reinstated him to his previous work position at

MPCC.  Plaintiff also asserts that Defendants have unlawfully retaliated against him for filing

this action.  (Pl.'s Mot., Addendum II, ECF No. 9, PAGEID # 188–89.)  More specifically,

Plaintiff alleges that he has been threatened with being placed in segregation, had his legal mail

opened, and has been prohibited from using the copier.  (*Id*. at PAGEID # 169, 188–89.)

When deciding whether to issue a preliminary injunction or temporary restraining order, the Sixth Circuit has instructed trial courts to consider the following factors:

> (1) whether the movant has a "strong" likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction.

*Leary v. Daeschner,* 228 F.3d 729, 736 (6th Cir. 2000) (citing cases); *see also In re Wellinger*, No. 05-73192, 2007 WL 1499818, at *1 (E.D. Mich. May 22, 2007) (citing *Taubman Co. v. Webfeats,* 319 F.3d 770, 774 (6th Cir. 2003).

Applied here, Plaintiff's request that the Court order PCI to reinstate him to his former position at MPCC should be denied because Plaintiff has failed to show that he would suffer irreparable harm from his current work placement as a yard worker. "Notably, a prisoner has no constitutional right to prison employment or a particular prison job." *Newson v. Steele*, No. 09-10346, 2009 WL 4730456, at *3 (E.D. Mich. Dec. 8, 2009) (citing cases) (denying prison's request for a temporary restraining order). Plaintiff's requests for injunctive relief relating to his allegations that PCI employees are retaliating against him for filing this action should likewise be denied as not sufficiently tied to any existing claim in the instant action. *See De Beers Consol. Mines Ltd. v. United States*, 325 U.S. 212, 220 (1945) ("A preliminary injunction is . . . appropriate to grant intermediate relief of the same character as that which may be granted finally," but is inappropriate where the injunction "deals with a matter lying wholly outside of the issues in the suit."); *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (denying preliminary injunction where the moving party failed to "establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint").

Accordingly, it is **RECOMMENDED** that Plaintiff's Motion for Order to Show Cause and Temporary Restraining Order (ECF No. 9) be **DENIED**.

## V.    DISPOSITION

For the reasons above, it is **RECOMMENDED** that Plaintiff be permitted to proceed with the following claims:  (1) Plaintiff's First Amendment retaliation claim against Defendant Cox arising from Plaintiff's assignment to the "guts" floor; and (2) Plaintiff's conspiracy claim against Defendants Cox and Dunn premised upon Plaintiff's performance review and work reassignment in December 2018.  The undersigned further **RECOMMENDS** that Plaintiff's remaining claims, including his claims against the Doe Defendants, be **DISMISSED** pursuant to 28 U.S.C. § 1915A for failure to state a claim on which relief may be granted.  It is further **RECOMMENDED** that Plaintiff's Motion for Order to Show Cause and Temporary Restraining Order (ECF No. 9) be **DENIED**.

In addition, as set forth above, Plaintiff's motion seeking amendment of his pleadings, his request to proceed *in forma pauperis*, and his motions requesting the United States Marshal to effect service of process are **GRANTED**, (ECF Nos. 2, 4, 5, 6, 7, 12, 14, 15, 16, and 17); and his motion seeking appointment of counsel is **DENIED**, (ECF No. 8).

## VI.    PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District   adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE